The opinion of the court was delivered by
Breaux, J.
In 1874 the relator, being at the time Public Administrator, applied for and had himself appointed dative testamentary executor of the succession of Walter O. Winn.
He caused an inventory of the property of the succession to be made, and took possession.
In 1880 he presented a provisional account of his administration.
On the 15th day of April, 1889, two alleged creditors of the succession having presented a petition praying for an order on the testamentary executor to file his account, showing what moneys he had received and what paid out, it was granted. These petitioners also prayed for his dismissal from the executorship.
He failed to comply with the court’s order, and did not file an account, but instead filed several pleas, which were overruled.
On the 4th of May, 1889, a judgment was rendered removing the executor from his trust.
George A. Staples made application to be appointed dative testamentary executor to succeed the executor dismissed. The application was opposed by the executor who had been dismissed.
Judgment was signed in open court on the 9th day of November, 1889, dismissing this opposition and confirming the appointment of the executor now in office.
On the 5th day of May, 1890, an order was issued to imprison the relator until he complied with the order of court by filing an account of executorship, and thereby purged himself of contempt in not having complied with the court’s order..
While in prison the relator prepared and presented what purports *1077 to be an account of his gestión as dative testamentary executor and immediately after applied for his release.
This was denied.
The relator applied to this court to obtain his release from jail and prayed for writs of certiorari and prohibition and all other orders necessary in the premises (to be released temporarily until this court’s session in November), and that after due proceedings, the writs be made peremptory and he discharged permanently.
On the 9th of September, 1890, the respondent judge was ordered to show cause, in writing, why the further execution of the order of commitment should not be suspended until the application for relief shall have been heard and determined.
In compliance with this order the respondent judge filed his answer.
Afterward, on the 22d day of September, it was ordered that the respondent show cause why the relief prayed for should not be granted, and he was directed to file his answer to this order on the first Monday of November, 1890.
In the meantime the relator was released and the further execution of the order of commitment for contempt was suspended pen - dente lite. The respondent was also ordered to annex to his return the original of all the records and documents referred to in the petitions and answers.
The respondent in his answer states that he has forwarded all the original documents called for, which were found in the record of the succession of .Winn. The original inventory and other documents are not in the record and could not be forwarded.
The account filed, upon which the relator relied to obtain his release, and to which the respondent objected as not being an accurate, and as not presenting a full and complete, statement of the affairs of the succession, ■while under the administration of the re - lator is addressed properly to the court.
He, in his account, in a preliminary statement, reseryes the exceptions previously filed by him and mentions the different grounds upon which he previously relied.
He charges himself with the proceeds of the sale of a part of Copeland Plantation made December 5, 1885, viz: $8020.
He credits himself with costs and attorneys’ fees amounting to $528.46.
*1078 He presented his account, and, alleging that he had complied with the order of court, prayed to be released; and further prayed that the account be homologated and for all orders necessary in the premises.
In his petition for release relator -alleges under oath that the account that has been filed is a true, correct and proper account.
That the amount charged is the first and only amount belonging to the succession of W. O. Winn which he has received. That it was disbursed as stated in his account, as the vouchers will establish on trial (to determine whether or not it shall be homologated).
For the purpose of supporting his allegations in part, at least, he annexed a copy of the testimony of his attorney at one time.
The attorney testifies that while he was relator’s attorney he collected the funds and paid them, and that the relator did not receive any amount during the time except his commission as testamentary executor. In pursuance of the understanding between him and his client he retained the amount of the succession funds until a certain judgment had been rendered in the United States Court, and then paid it over to the creditors as decreed by the court, the receipts for which are in the file of the succession. The attorney added that since his discharge he had not attended to any of the functions of the executor.
The foregoing being the statement of the case, we at once state that the account should contain a statement of the receipts and payments of the executor and of the property received, that sold, and the remainder delivered to the present executor. But the record does not disclose the facts necessary to enable us to determine whether the account is an absolute nullity or not, nor can we satisfactorily determine how much or how little of the property has been accounted for. The inventory is not in evidence; there is no testimony respecting the assets of the succession; whether large or small, is not proven.
Not the least reference is made to any particular property received by the testamentary executor, for which he has failed to account, nor to any particular amount.
If the succession owns considerable property, which has been received by the executor, and which he retains; if he has made large *1079 collections of money for which he fails to account, the statement presented is absolutely incomplete; but if the amounts be small, and he has attempted to include a proper statement in his account, although the required forms have not been observed, and matters of substance may be to some extent wanting, the account filed is complete enough to enable him to obtain his release.
The respondent judge alleges in his answer that he has the authority, and that it is especially within his province to compel compliance with the order issued to account, and to see and determine whether the officer has complied.
In the event of absolute refusal to account, the position is correct.
We presume respondent relies upon the case of the State ex rel. Kiernan & Waters vs. Judge, 41 An. 315, and authorities quoted. No case is quoted or any authority referred to. We have not been favored with a brief by the relator, nor by the respondent. Assuming that these decisions are relied upon, we do not discover any great analogy in the cases with the one under consideration. They arose from a violation of an order of injunction.
The court condemned the infringers of the order to ten days’ imprisonment. On a review of the District Oourt’s action this court did not entertain jurisdiction; refused the writ of certiorari, and decided that in issuing the injunction the court exercised a right vested in it; that the injunction was a proper exercise of judicial authority; that the disobedience was a contempt, and that the proceedings were regular.
Had it exceeded the limit of judicial authority, the result would doubtless have been different; jurisdiction would have been entertained.
If, for example (although the defendant had acknowledged the court’s power, and no further acts of violation had béen committed), after the ten days’ imprisonment had elapsed another term of imprisonment had been ordered without the least authority, the appellate court would not have refused relief and declined to order the release of the prisoner.
If an administrator files his account, his imprisonment and all ■contempt by disobedience-is at an end; the appellate court will not be closed against application to obtain his liberty.
The District Oourt in the injunction cases before referred to had the exclusive authority to compel obedience to its order, and to *1080 punish disobedience by sending the disobeyer to jail any number of days not exceeding ten, and to renew the penalty in case of persistent violation.
In probate proceedings the recalcitrant executor can, under the orders of the District Court, be imprisoned until he files his account' of administration as ordered. C. C. 1011.
This is particularly within the exclusive authority of that court.
When the party condemned has incurred the penalty in the former cases (the injunction cases before mentioned), or when in the latter (as in the case at bar) he has filed his account, the limit of the exclusive authority is reached; and if necessary to secure his release, the appellate court will not decline jurisdiction.
We unhesitatingly conclude that the relator should not be again imprisoned under the original order isssued, and that he should be given the opportunity to prove the correctness of his account on trial. The desire of the respondent judge to bring about a final settlement of the succession is commendable, but we do not discover that his purpose will be more readily subserved by prolonged imprisonment of the relator.
If the condition of the succession be as alleged in respondent’s answer, the relator by filing and persistently presenting his account as correct will thereby expose himself to loss and future troubles without thereby obtaining extraordinary delay.
The court’s decree, on issue joined, can remodel the account so as to make it conform to law and justice (in case the remodeling be necessary).
The writ of prohibition is made peremptory, and the relator discharged. ■